## DANIELS *et al.* v. CHAFFIN.

Mill and mill dam: ADJACENT PROPRIETORS: CONTRACT: TRESPASS. The defendant purchased a certain piece of ground, including a mill and machinery belonging thereto, with the privilege of keeping and maintaining a race for conducting water to the mill, extending therefrom to a dam above, between which and the mill purchased by defendant was a saw-mill and premises then owned by the same person who sold to the defendant, and supplied with water from the same dam. In defendant's contract of purchase it was stipulated that said race, extending from said premises to the dam above, was to be of the width of twenty-two feet in front of the saw-mill, above " *in the place where the race now runs.*" Defendant was to " keep his race, flumes and bulk-head in good repair, so as to cause no unnecessary waste of water. After defendant's purchase of his said premises, and while he was in possession thereof, the plaintiffs purchased the saw-mill and premises above. The race through which the water was conducted to defendant's mill, and which passed through the premises purchased by plaintiffs, was at the time of defendant's purchase actually from twenty-four to twenty-eight feet wide, instead of twenty-two, the width stated in the contract. At the time of plaintiffs' purchase, the defendant had constructed a flood-gate in said race above the lower end of the mill afterward purchased by plaintiffs, bolting it to plank in the bottom of the race. After plaintiffs' purchase, this gate was washed away, and the defendant re-

placed the same by putting it into the race from one to three feet from where it was before, this being a better place to secure it ; and to prevent its again being carried out, the braces to it were nailed to plaintiffs' mill. This gate was necessary to the protection of defendant's mill, but in time of high water increased the danger to plaintiffs'. In an action of trespass for nailing boards to plaintiffs' mill, in keeping open a passage way for water wider than defendant's contract of purchase warranted, etc., it was *held :*

1. That under his contract of purchase defendant had the right to use the race to the width it existed at the time of his purchase, though it exceeded in actual width the twenty-two feet named in the contract.

2. That it being his duty to keep the race in good repair, he had the right to do therein, and in all parts thereof, whatever was necessary to the protection of his own mill, doing no unnecessary injury to plaintiffs' property, and that to accomplish these purposes, he might enter upon the premises of plaintiffs through which the race run.

3. That defendant, in replacing the gate that was washed away, might, if necessary, change its location, as he did, provided no special damage resulted therefrom to plaintiffs' property, beyond what would have occurred, if constructed at the old place.

4. That as the supports to plaintiffs' mill constituted one side of the race, the defendant had the right to use the same, by fastening thereto the braces of the new gate, in the performance of his duty and right to keep up and maintain the race.

*Appeal from General Term, Ninth District (Black Hawk County).*

MONDAY, DECEMBER 20.

TRESPASS TO REAL PROPERTY. — The parties claim title from a common source. They are mill owners, their machinery being propelled by water, taken from the same dam. Plaintiffs' mill is immediately above, and contiguous to, that of defendant. The water which propels the machinery of the latter, is brought through a race, running immediately in front of plaintiffs' mill, and through their premises. Defendant claims under a contract of

November 16, 1863; plaintiffs, under a deed of November 27, 1866; but they had full notice of defendant's rights. It seems that the high water took out certain works in the race, leading to defendant's mill, and that he entered for the purpose of repairing or replacing the same; that he succeeded in so doing; and it is of these acts that the plaintiffs complain in this action. They appeal from the judgment of the General Term, affirming the judgment of the District Court, and assign, for error, the action of the court, in giving and refusing certain instructions, and in overruling a motion for a new trial.

*Bois, Allen & Couch* for the appellants.

*Miller & Miller* for the appellee.

WRIGHT, J. — It becomes important to set out the material facts of the contract of November 16, 1863, for it is of the construction given to these that plaintiffs complain. Indeed, this is all there is of the case.

By this, the owner of this dam, as also of the ground adjoining, and, as far as appears, at the time, of all the mills, sold to defendant a certain piece of ground, described, etc., including the planing-mill thereon, fixtures and machinery, belonging thereto, etc., with the "privilege of keeping and maintaining a race for conducting water to said mill, from the dam　*　*　extending from said premises to said dam, above the mill, and of the width of twenty-two feet in front of the said mill (plaintiffs' mill), standing between said planing-mill and said dam, *in the place where the race now runs.*　*　*　*　* Reserving also the right to build and erect abutments in the race in front of said saw-mill, and of placing and erecting a building over said race."　*　*　*　Defendant was to "keep his race, flume, and bulkhead, in good repair, so as to cause no unnecessary waste of water."

When plaintiffs purchased, defendant was in posses-
sion, using the mill and machinery, and the water, by
means of this race. The race too, as the contract shows,
was there at the time defendant purchased, but was
actually from twenty-four to twenty-eight feet wide. One
side of it was made by spiking plank to the posts of plain-
tiffs' mill from five to six feet high. When defendant
purchased, certain parts of an old flood-gate were in this
race ten or twelve feet *below the upper end* of plaintiffs'
mill. After this, and before plaintiffs' purchase, he built
*another* gate in said race, about twelve feet *above the
lower end* of plaintiffs' mill, the said mill being about
fifty feet in length. This last flood-gate was bolted to
plank in the bottom of the race. And, as above stated,
the posts of the old, and this new gate entire, were in the
race when plaintiffs made their purchase. In the spring
of 1867 the last gate was taken out by high water, and
the next fall defendant replaced the same, by putting it
into the race from one to three feet from where it was
before, this being a better place to secure it to the bottom
of the race than where it originally stood. This race
was covered at this point by plaintiffs, and defendant
took up said covering while putting in this gate. In
fastening the gate, and to prevent its being again carried
out by high water, the braces to the same were fastened
to plaintiffs' mill. This gate was necessary to the pro-
tection of defendant's mill in high water. It dams up
the water in the race, and in time of high water increases
the danger, therefore, to plaintiff's mill.

The trespasses complained of are *in nailing and fasten-
ing boards to plaintiffs' mill*, in keeping open a passage
way for water to a greater extent than defendant's con-
tract warranted, and in placing lumber, timber and other
materials in and upon plaintiffs' premises, to the damage,
etc. By the terms of the contract, defendant had a right

to use this race to the *width as it existed*, or " in the place where it now runs." If, therefore, when plaintiffs purchased, it exceeded in actual width the twenty-two feet named, yet, as defendant was then in its possession, he might continue to use and occupy it for all purposes necessary to his mill, and as contemplated by the contract, though it turned out to be twenty-eight instead of twenty-two feet in width. It was his duty to keep the race, and every thing connected with it, as defined in the contract, in good repair. And he had the right to do therein, and in all parts of it, whatever was necessary to the protection of his own mill, doing no unnecessary injury to plaintiffs' property; and to accomplish these purposes he might enter upon the premises, etc. The fact that defendant continued to keep the braces upon the posts of plaintiffs' mill would not be a trespass for which he would be answerable, under the facts disclosed. He had a right to the use of these supports in maintaining or keeping up his race. These timbers constituting one side of the race, defendant would have a right to fasten thereto the timbers of the new gate or bulk-head.

The right to replace this gate is clear, beyond doubt. If necessary, its location could be changed, provided no special damage resulted therefrom to plaintiffs' property, beyond what would have occurred if reconstructed at the former or old place. Of course, in all his work, defendant is to be held to proper care and skill, and would be liable (under a proper petition), if in the exercise of the rights conferred by his contract he was guilty of negligence or carelessness to plaintiffs' injury.

These, in brief, were defendant's rights, and the law applicable to the contract and facts disclosed. The court correctly and most perspicuously stated the law to the jury, as above announced. The instructions asked by plaintiffs were either embodied in those given, or were in

conflict therewith, and, hence, properly refused.   It only remains to say, that as we understand the record, the gate as last erected was no more on plaintiffs' premises than it was before.   For the assumption that it was changed from defendant's to plaintiffs' premises there is no warrant in the testimony.   Nor does the testimony warrant the conclusion that it was any higher.   In all respects the verdict was warranted by the evidence.   And I am, hence, instructed to announce that the judgment shall stand

Affirmed.